# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Pyle v. City of Granite City*, 2012 IL App (5th) 110472

---

| | |
|---|---|
| Appellate Court Caption | JAMES W. PYLE, Plaintiff-Appellee, v. THE CITY OF GRANITE CITY, RON SELPH, JUDY WHITAKER, LYNETTE KOZER, KIM MAC TAGGART, GAIL VALLE, and EDWARD HAGNAUER, Defendants-Appellants. |
| District & No. | Fifth District<br>Docket No. 5-11-0472 |
| Filed | October 16, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff firefighter was "catastrophically injured" pursuant to *Krohe* and defendant city was required to pay his health insurance premiums until he became Medicare eligible, but the city was not required to pay the premiums for a policy to supplement his Medicare coverage after he became eligible for Medicare. |
| Decision Under Review | Appeal from the Circuit Court of Madison County, No. 04-MR-231; the Hon. Clarence W. Harrison II, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

| Counsel on Appeal | Jane Unsell and Erin M. Phillips, both of Unsell & Schattnik, of Wood River, for appellants. |
| | |
| | Thomas W. Duda, of Law Offices of Thomas W. Duda, of Arlington Heights, for appellee. |
| | |
| Panel | JUSTICE WEXSTTEN delivered the judgment of the court, with opinion. |
| | Presiding Justice Donovan and Justice Goldenhersh concurred in the judgment and opinion. |

## OPINION

¶ 1      The plaintiff, James W. Pyle, a former Granite City firefighter, filed suit in the circuit court of Madison County against the defendants, the City of Granite City, Ron Selph, Judy Whitaker, Lynette Kozer, Kim Mac Taggart, Gail Valle, and Edward Hagnauer (collectively the City). Pyle sought declaratory judgment and *mandamus* relief asserting that the City had improperly denied payment for health insurance premiums it owed pursuant to section 10(a) of the Public Safety Employee Benefits Act (the Act) (820 ILCS 320/10(a) (West 2000)). The circuit court granted Pyle's motion for summary judgment, finding that Pyle was entitled to the payments during his lifetime.

¶ 2      The City appeals, arguing that the circuit court erred in determining that Pyle was catastrophically injured pursuant to the Act, that Pyle's benefits were for his lifetime, and that the City's obligation to pay health insurance premiums for Pyle continued even though Pyle received Medicare benefits. We affirm in part and reverse in part.

¶ 3                    FACTS

¶ 4      Pyle was employed as a City firefighter from 1977 to 2000. While responding to emergencies between March 1998 and September 1999, he sustained injuries to his right shoulder and lower back while moving a water hose at two separate residential fires. He was treated for this condition with physical therapy and epidural injections and underwent surgery in November 1999 and March 2006. Pyle ultimately sought a line-of-duty disability pension, alleging that the effects of his injuries prevented him from returning to work as a firefighter. Effective November 3, 2000, and pursuant to section 4-110 of the Illinois Pension Code,[1] the

---

[1] Line-of-duty disability pensions are paid to firefighters who, "as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty or from the cumulative effects of acts of duty, [are] found *** to be physically or mentally permanently disabled for service in the fire department." 40 ILCS 5/4-110 (West 2000).

City's pension board awarded Pyle a disability pension for the injuries he sustained in the line of duty, and his City employment ceased.

¶ 5       On April 19, 2004, Pyle filed his complaint against the City. In his complaint, Pyle alleged that he sustained "a number of catastrophic injuries" to his right shoulder and lower back while responding to emergency calls between March 1998 and September 1999, that he had been awarded a line-of-duty disability pension due to the fact that he was found to be permanently disabled from performing the essential physical responsibilities of his firefighting position, and that he was therefore entitled to the City's payment of health insurance premiums on his behalf pursuant to the Act (820 ILCS 320/10 (West 2000)). Pyle sought lifetime benefits, reimbursement for any past premium payments he had made, prejudgment interest, out-of-pocket litigation expenses, and attorney fees. On March 24, 2011, Pyle moved for summary judgment, asserting that he had been wrongfully denied the benefits of the Act from the City.

¶ 6       The City countered Pyle's assertions by arguing that a genuine issue of material fact existed as to whether Pyle had suffered a "catastrophic injury." The City argued that the Illinois Supreme Court's definition of "catastrophic injury," as set forth in *Krohe v. City of Bloomington*, 204 Ill. 2d 392 (2003), should be revised for public policy reasons and to bring the definition of "catastrophic" in accord with common understanding and legislative intent. Alternatively, the City asserted that if required to make payment for Pyle's health insurance premiums, its duty to make such payments encompassed only premium payment amounts due until Pyle attained age 65 and became Medicare eligible in 2008. The City argued that the Act did not entitle Pyle to receive a lifetime benefit of premiums paid.

¶ 7       After hearing arguments on April 8, 2011, the circuit court granted Pyle's motion for summary judgment, finding him eligible for benefits pursuant to the Act. On August 26, 2011, after hearing further arguments on the issue of damages, the circuit court ordered the City to reimburse Pyle for premium amounts due from the date of his disabling line-of-duty retirement until he became Medicare eligible. The circuit court further ordered the City, upon Pyle's Medicare eligibility, to pay policy premiums to supplement Medicare until his death. The circuit court held that the amount that the City would be liable for would be capped at the amount paid for the supplemental policy and would "not go in excess of what the City pays for other beneficiaries." The circuit court stated that its ruling was a preliminary one subject to the entry of a final order.

¶ 8       Because the City had not paid health insurance premiums on his behalf, Pyle paid premium payments until April 8, 2011, the date the circuit court entered summary judgment. The Union Relief and Welfare Fund paid 80% of Pyle's health insurance premium for the first year of disability and thereafter paid 60% of his health insurance premium for each year after until he attained age 65 and became Medicare eligible in August 2008. At that point, the plaintiff accepted the primary Medicare coverage and acquired the supplemental policy to protect against deductibles, copayments, and medical fee limitations.

¶ 9       On October 3, 2011, the circuit court entered its final order granting Pyle's motion for summary judgment and awarding Pyle $22,440.80 for past premiums paid. The circuit court found that on August 3, 2008, Pyle had accepted health insurance through the federal

Medicare program. The circuit court ordered the City to continue paying $350.66 as health insurance premiums for supplemental Medicare coverage on behalf of Pyle "without limitation." The circuit court ordered the defendants "to continue making said premium payments for health insurance subject to periodic increases required by the insurance carrier; provided, however, the monthly insurance payment made on behalf of [p]laintiff James W. Pyle shall not exceed the monthly insurance payment being made on behalf of a current Firefighter Captain with identical seniority." The court denied Pyle's claim for prejudgment interest and attorney fees. The circuit court awarded Pyle court costs in the amount of $594.

¶ 10    On October 31, 2011, the City filed a timely notice of appeal.

¶ 11                                ANALYSIS

¶ 12    Initially, we note that on appeal, Pyle filed a motion to strike certain portions of the City's brief and appendix. We hereby deny Pyle's motion to strike with respect to the City's statement of facts and argument sections in its brief and find that the City's appendix was subsequently amended to comply with supreme court rules. However, we grant Pyle's motion to the extent that the materials in the City's appendix, including the newspaper articles, senate transcript, and an Illinois Municipal League report, were submitted as evidence not presented to the circuit court. See *People v. Reimolds*, 92 Ill. 2d 101, 106-07 (1982) ("A court of review must determine the issues before it solely on the basis of the record made in the trial court."). We limit our review to the record as it existed when the trial court granted Pyle's motion for summary judgment.

¶ 13    Summary judgment is proper where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2000). In reviewing the circuit court's summary judgment order, "we are presented with a question of law and the *de novo* standard of review applies." *A.B.A.T.E. of Illinois, Inc. v. Quinn*, 2011 IL 110611, ¶ 22. "The *de novo* standard of review is also dictated by the fact that the issue before us involves the construction of a statute." *Id.* ¶ 23.

¶ 14    The City argues that the circuit court erred in determining that Pyle was catastrophically injured pursuant to the Act, thereby entitling him to benefits.

¶ 15    Pursuant to section 367f of the Illinois Insurance Code, also known as the firemen's continuance privilege, a municipality providing group accident and health insurance for its firefighters must provide for the election of continued group insurance coverage for the retirement or disability period of the firefighter. 215 ILCS 5/367f (West 2000). Pursuant to section 10 of the Act, however, if the firefighter is catastrophically injured while reasonably responding to an emergency, he receives a benefit above and beyond that provided for in the Illinois Insurance Code, namely that the municipality pays the health insurance premiums for the continued group insurance coverage of the injured firefighter and his family. Specifically, section 10 of the Act provides as follows:

> "(a) An employer who employs a full-time *** firefighter, who *** suffers a catastrophic injury or is killed in the line of duty shall pay the entire premium of the employer's health insurance plan for the injured employee, the injured employee's

spouse, and for each dependent child of the injured employee until the child reaches the age of majority ***. The term 'health insurance plan' does not include supplemental benefits that are not part of the basic group health insurance plan. If the injured employee subsequently dies, the employer shall continue to pay the entire health insurance premium for the surviving spouse until remarried and for the dependent children under the conditions established in this Section. However:

> (1) Health insurance benefits payable from any other source shall reduce benefits payable under this Section.

> * * *

> (b) In order for the *** firefighter *** or dependent children to be eligible for insurance coverage under this Act, the injury *** must have occurred as the result of the *** firefighter's response to what is reasonably believed to be an emergency ***. Nothing in this Section shall be construed to limit health insurance coverage or pension benefits for which the *** firefighter, spouse, or dependent children may otherwise be eligible." 820 ILCS 320/10 (West 2000).

¶ 16    In *Krohe v. City of Bloomington*, 204 Ill. 2d 392 (2003), the plaintiff was a firefighter employed by the City of Bloomington who was awarded a line-of-duty disability pension for injuries sustained in the line of duty. *Id.* at 394. Shortly thereafter, the plaintiff asked the City to continue paying his and his family's health insurance premiums pursuant to section 10 of the Act (820 ILCS 320/10 (West 2000)), and the City denied his request. *Krohe*, 204 Ill. 2d at 394.

¶ 17    The supreme court recognized that the legislature had failed to define "catastrophic injury" and characterized the phrase as ambiguous. *Id.* at 395. Because the court determined the phrase to be ambiguous, it considered the legislative history and debates, which revealed that the legislature intended to define "catastrophically injured" as a police officer or firefighter who, due to injuries, was forced to take a line-of-duty disability. *Id.* at 398. Thus, the supreme court concluded that a "catastrophically injured" firefighter was synonymous with a firefighter who, due to injuries, had been forced to take a line-of-duty disability under section 4-110 of the Illinois Pension Code (40 ILCS 5/4-110 (West 2000)). *Krohe*, 204 Ill. 2d at 400.

¶ 18    The City argues that the definition of "catastrophic injury" in the Act, as enumerated by the supreme court in *Krohe*, does not comport with the commonly understood meaning, that the supreme court's reliance upon legislative hearings was improper, that attempts to amend the Act reflect that the supreme court's definition must be revised, that the supreme court's definition results in a devastating economic impact upon municipalities, and that the supreme court's definition could improperly encourage persons to seek line-of-duty disability pensions rather than to attempt to return to gainful employment.

¶ 19    The City's arguments overlook the fact that we are required to follow the decisions of the Illinois Supreme Court. *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 551 (1983) (appellate court has no authority to overrule the supreme court or to modify its decisions); *People v. Pruitt*, 239 Ill. App. 3d 200, 209 (1992) ("we are obliged to follow decisions of our supreme court and of the United States Supreme Court"). "After the supreme court has

declared the law with respect to an issue, this court must follow that law because only the supreme court has authority to overrule or modify its decisions." *Illinois Labor Relations Board v. Chicago Transit Authority*, 341 Ill. App. 3d 751, 758 (2003).

¶ 20     Thus, we cannot overturn or modify the supreme court's decision in *Krohe* by concluding that its definition of "catastrophic injury" does not comport with the commonly understood meaning, that its reliance upon legislative hearings was improper, that its definition must be revised, that its definition will result in economic devastation for municipalities, or that its definition will improperly encourage persons to seek line-of-duty disability pensions. We therefore reject the City's contentions and conclude, pursuant to supreme court precedent, that the phrase "catastrophic injury" is synonymous with an injury resulting in a line-of-duty disability under section 4-110 of the Illinois Pension Code (40 ILCS 5/4-110 (West 2000)). Thus, because Pyle suffered an injury resulting in a line-of-duty disability pension and because neither party disputes that his injury occurred as a result of his response to an emergency, Pyle qualifies for the Act benefits.

¶ 21     The City also argues that the circuit court erred in determining that the Act benefits amounted to lifetime benefits. Pyle counters that the plain language of section 10(a) of the Act (820 ILCS 320/10(a) (West 2000)) clearly contemplates payment for the lifetime of the injured firefighter, and he argues that the circuit court therefore properly awarded him lifetime benefits.

¶ 22     Subsequent to *Krohe*, the supreme court determined that "under section 10(a) of [the Act], an employer's obligation to pay the entire health insurance premium for an injured officer and his family attaches on the date that it is determined that the officer's injury is 'catastrophic'–that is, on the date it is determined that the injured officer is permanently disabled and therefore eligible for a line-of-duty disability pension." *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 29. We are asked in this appeal to determine when the employer's obligation ends.

¶ 23     We agree with Pyle that the plain language of section 10(a) of the Act contemplates the payment of benefits for the life of the employee. Section 10(a) of the Act states that if the employee dies, "the employer shall continue to pay the entire health insurance premium for the surviving spouse *** and for the dependent children." 820 ILCS 320/10(a) (West 2000); accord 215 ILCS 5/367f(3) (West 2000) (the "disability period" of a fireman "means the period *** which begins on the day the fireman is removed from a municipality's fire department payroll because *** the fireman's disability is established *** and *** ends [upon] *** the fireman's death or–if at the time of the fireman's death the fireman is survived by a spouse who, in that capacity, is entitled to receive a surviving spouse's monthly pension pursuant to Article 4 of the Illinois Pension Code–then the death or remarriage of that spouse"). We find no circuit court error on this basis.

¶ 24     However, we agree with the City that where, as in this case, the employee lives to become Medicare eligible, his benefits payable under the Act, *i.e.*, the payment of premiums on his behalf, shall be reduced and may, in some cases, cease.

¶ 25     "In construing the meaning of a statute, the primary objective of this court is to ascertain and give effect to the intention of the legislature, and all other rules of statutory construction

are subordinated to this cardinal principle." *Metzger v. DaRosa*, 209 Ill. 2d 30, 34 (2004). "The plain language of the statute is the best indicator of the legislature's intent." *Id.* at 34-35. "When the statute's language is clear, it will be given effect without resort to other aids of statutory construction." *Id.* at 35.

¶ 26 Section 10(a) of the Act provides that "[h]ealth insurance benefits payable from any other source shall reduce benefits payable under this [s]ection." 820 ILCS 320/10(a)(1) (West 2000). Medicare benefits are guaranteed to working individuals in the United States who reach a designated retirement age and have paid Medicare taxes (42 U.S.C. § 1395c (2000)), and amount to "[h]ealth insurance benefits payable from any other source" (820 ILCS 320/10(a)(1) (West 2000)). Accordingly, once Pyle reached age 65 and became Medicare eligible, the "benefits payable" under section 10(a) of the Act, *i.e.*, the City's payment of health insurance premiums on his behalf, were required to be reduced.

¶ 27 Pyle argues that the benefits payable to him cannot cease, however, because the plain language of section 10(a) requires that the benefits payable be "reduce[d]," not extinguished. If the City had been paying premiums for Pyle and his spouse, and only Pyle had become Medicare eligible, the benefits payable under section 10(a) of the Act would have been reduced only by the amount due for Pyle's premium. The City would have continued to pay health insurance premiums for his spouse under the section's conditions. However, because the City here paid premiums solely for Pyle, Pyle's benefits were reduced in their entirety when he became eligible for Medicare benefits. The City was no longer required to pay the entire premium of the employer's health insurance plan on his behalf. The plain language of the statute supports this conclusion.

¶ 28 As noted by the City, this construction is also consistent with the remaining provisions of section 10(a) of the Act. The employer is required to pay "the entire premium of the employer's health insurance plan for the injured employee" and his family; yet, "[t]he term 'health insurance plan' does not include supplemental benefits that are not part of the basic group health insurance plan." 820 ILCS 320/10(a) (West 2000). "Supplement" means "something added *** especially to make up for a lack." Webster's New Dictionary 648 (2003).

¶ 29 Here, once Pyle became Medicare eligible, the circuit court's order required the City to pay premiums for a health insurance plan that supplemented Medicare, conferring "supplemental benefits that are not part of the basic group health insurance plan" (820 ILCS 320/10(a) (West 2000)), and the plain language of the statute does not require the City to pay premiums for these supplemental benefits. We reject Pyle's contention that the supplemental Medicare plan, providing protection for copayments, deductibles, and other limits on payment, does not confer benefits to Pyle.

¶ 30 This construction is also consistent with section 367f of the Illinois Insurance Code. "It is axiomatic that statutes related to the same subject matter are to be read in conjunction." *People v. Cherry Valley Public Library District*, 356 Ill. App. 3d 893, 897 (2005). As noted above, disabled firefighters who do not qualify for benefits pursuant to the Act may qualify for continuation of coverage pursuant to section 367f of the Illinois Insurance Code, the firemen's continuance privilege, and pay the premiums for continued group insurance

coverage. See 215 ILCS 5/367f (West 2000) (a city's group accident and health insurance for firemen employed by the city shall provide "for the election of continued group insurance coverage for the retirement or disability period of each fireman who is insured under the provisions of the group policy on the day immediately preceding the day on which the retirement or disability period of such fireman begins," with the fireman, his dependent, and spouse paying the premiums for the continued group insurance coverage). Pursuant to section 367f:

> "If a person electing continued coverage under this Section becomes eligible for [M]edicare coverage, benefits under the group policy may continue as a supplement to the [M]edicare coverage upon payment of any required premiums to maintain the benefits of the group policy as supplemental coverage." 215 ILCS 5/367f (West 2000).

¶ 31    When Pyle became Medicare eligible, the benefits under the City's group insurance plan supplemented the Medicare coverage, and he had the option to pay for the City-approved supplemental coverage. Accordingly, as noted by the City, Pyle, as an Act-qualified employee who pays his own Medicare supplement premium, is put in a similar position as a noninjured retired firefighter, with both receiving pension benefits, Medicare benefits, and Medicare supplemental benefits. The Act-qualified employee is therefore put in the position he would have been in had he not been injured. The plain language of the Act and the Illinois Insurance Code does not support the conclusion that the City is obligated to pay premiums for Pyle's supplemental Medicare coverage.

¶ 32    In sum, we find that the Act provides benefits beyond those provided in the Illinois Insurance Code. Pursuant to the Act, the City, rather than Pyle, was responsible for paying the insurance premium of its health insurance plan on Pyle's behalf, until he became Medicare eligible. At that time, the group insurance benefits may continue as a supplement to the Medicare coverage but do not constitute the health insurance plan for which the City is liable to pay premiums on Pyle's behalf. See 820 ILCS 320/10(a) (West 2000). Pyle may elect, however, to continue the supplemental Medicare coverage at his own cost. 215 ILCS 5/367f (West 2000). Accordingly, we affirm the circuit court's determination that Pyle was "catastrophically injured" as defined by *Krohe*, 204 Ill. 2d 392, and the circuit court's determination that the City was required to pay Pyle's health insurance premiums until 2008, when he became Medicare eligible. We reverse that portion of the circuit court's order requiring the City to pay Pyle's premiums to supplement his Medicare coverage after he attained age 65 in 2008.

¶ 33                                                      CONCLUSION

¶ 34    For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

¶ 35    Affirmed in part and reversed in part; cause remanded.