2021 IL App (1st) 200829
Opinion filed December 23, 2021

Fourth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THOMAS BARRY, BERNARD BRNE, MICHAEL CIARA, JAMES FITZGIBBON, JOHN HATZIS, WILLIAM KESTLER, EDWARD KICHURA, MICHAEL KING, JEROME KOCH, TERRENCE McSHANE, MICHAEL MICHON, LAWRENCE O'BOYLE, GEORGE RADKA, WILLIAM REDDY, MICHAEL ROCHE, ANDREW SOPKO, CHARLES SWAN, JOHN TUMPICH JR., LAWRENCE WALSH, and RANDALL WALZ, | ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 19 CH 5287 |
| THE CITY OF CHICAGO, | ) ) ) | Honorable Raymond W. Mitchell, |
| Defendant-Appellee. | ) ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs, former Chicago Fire Department employees who suffered career-ending injuries, sued defendant, the City of Chicago (City), alleging that they are guaranteed by statute

lifetime premium-free coverage under the City's group health insurance plan for active-duty employees. The circuit court dismissed plaintiff's claims, ruling that the City's obligation to provide premium-free participation in its group plan ended when plaintiffs became eligible for Medicare because benefits payable under the statute are reduced by health insurance benefits payable from any other source. The circuit court also ruled that plaintiffs lacked standing to bring claims on behalf of their family members.

¶ 2     On appeal, plaintiffs argue that (1) they are entitled to premium-free health insurance on a lifetime basis, so that benefit does not end upon their eligibility for Medicare coverage at age 65, (2) the circuit court relied on precedent that misconstrued the relevant statute, and (3) they had standing to bring claims on behalf of their eligible dependents.

¶ 3     For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 4                                I. BACKGROUND

¶ 5     The Public Safety Employee Benefits Act (Act) (820 ILCS 320/1 *et seq.* (West 2018)) guarantees health and educational benefits for firefighters who are injured in the line of duty, as well as their spouses and children. Specifically, the Act requires public employers to "pay the entire premium of the employer's health insurance plan" for employees catastrophically injured in the line of duty, their spouse, and their dependent children. *Id.* § 10(a).

¶ 6     Plaintiffs were full-time Chicago Fire Department employees. Each suffered a career-ending injury while on duty and responding to an emergency and was awarded a duty disability

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

benefit. In compliance with the Act, the City thereafter provided each plaintiff with premium-free health insurance through its group health insurance plan for active-duty employees.

¶ 7 At age 65, plaintiffs became Medicare participants, and the City terminated their premium-free coverage under its group plan. To supplement their Medicare coverage, the City allowed plaintiffs to participate in its Medicare supplement retiree health care plan until that plan was discontinued in December 2016. Plaintiffs could thereafter participate in a plan sponsored by the Chicago Firefighters Union Local 2 or purchase other Medicare supplemental plans. The City maintained that, if plaintiffs chose to use any of these supplemental plans, they were responsible for paying the plan premiums.

¶ 8 Nineteen plaintiffs filed a complaint in April 2019. They alleged that the Act required the City to provide them with premium-free coverage through its group plan for active-duty employees for the duration of their lifetimes regardless of their Medicare eligibility. Some plaintiffs also alleged that the City improperly terminated premium-free coverage for their spouses and children under age 26. Plaintiffs requested an injunction requiring the City to reinstate them in its group insurance plan for active-duty employees and sought damages in the amount of the premiums they paid for plans that supplemented their Medicare coverage.

¶ 9 Plaintiffs filed an amended complaint in May 2019, which added plaintiff Andrew Sopko. Sopko alleged that after he turned 65, the City provided him and his wife with premium-free coverage through its "Retiree Health Plans" rather than its plan for active-duty employees. The amended complaint repeated the allegations of the 19 other plaintiffs.

¶ 10    The City moved to dismiss the amended complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)). The City argued that the claims plaintiffs asserted on behalf of their spouses and children should be dismissed under section 2-619(a) of the Code (*id.* § 2-619(a)) for lack of standing. The City argued that the Act guaranteed plaintiffs' spouses and dependent children the right to insurance coverage, that right belonged to them personally, and nothing indicated that they lacked the capacity to assert their own claims.

¶ 11    Regarding plaintiffs' own benefits claims, the City argued those claims should be dismissed under section 2-615 of the Code (*id.* § 2-615)) because the Act does not require public employers to pay premiums for insurance plans that supplement Medicare. The City argued section 10(a)(1) of the Act expressly limits employers' obligation to pay premiums for health coverage when other benefits are available, stating that "[h]ealth insurance benefits payable from any other source shall reduce benefits payable under this Section." 820 ILCS 320/10(a)(1) (West 2018). The Act also states that "[t]he term 'health insurance plan' does not include supplemental benefits that are not part of the basic group health insurance plan." *Id.* § 10(a). The City contended that because plaintiffs had Medicare, they wanted to use the City's plan for active-duty employees to supplement that coverage, but the Act does not require the City to pay premiums for supplemental coverage. The City also argued that the Illinois Appellate Court rejected plaintiffs' precise arguments in *Pyle v. City of Granite City*, 2012 IL App (5th) 110472, which also involved an injured firefighter eligible for Medicare.

¶ 12    In their response, plaintiffs argued that they should be able to assert their family members' claims because they had a "real interest" in their spouses' benefits and their spouses were entitled

to benefits since plaintiffs were injured on the job. Plaintiffs also argued that (1) the Act required the City to continue providing premium-free and lifetime coverage under the City's plan for active-duty employees; (2) *Pyle* misinterpreted the Act; and (3) section 10(a)(1) of the Act, which states that "benefits payable from any other source shall reduce benefits payable" under section 10(a) (820 ILCS 320/10(a)(1) (West 2018)), was not a limit on the employer's obligation to pay plan premiums, but rather was a coordination of benefits clause, which allows the employer to reduce its payments for health care costs that are also covered by Medicare.

¶ 13    In reply, the City argued regarding the standing issue that the claims of plaintiffs' spouses and dependents were based on the alleged denial of those individuals' own benefits and not the denial of plaintiffs' benefits. The City also argued that plaintiffs identified no legal authority that would allow them to assert the rights of their spouses or dependents. Regarding the merits of plaintiffs' own claims, the City argued that *Pyle* was controlling and correctly read the plain language of section 10(a) to limit the employer's obligation to pay plan premiums when benefits were payable from another source, like Medicare. The City contended that plaintiffs' argument that section 10(a)(1) was a coordination of benefits clause was unsupported by the Act's text or legislative history.

¶ 14    On November 22, 2019, the circuit court dismissed the claims plaintiffs brought on behalf of their family members for lack of standing and dismissed with prejudice plaintiffs' own claims against the City. Specifically, the court held that plaintiffs could not litigate the alleged denial of benefits claim on behalf of their family members because that claim asserted an injury that belonged, not to plaintiffs, but rather to their spouses and dependents. Regarding plaintiffs'

claimed entitlement to lifetime premium-free coverage under the City's group insurance plan, that claim was rejected by *Pyle*, which was controlling as the only appellate court case at that time to address the effect of Medicare eligibility on the Act's premium-free insurance requirement.

¶ 15    Plaintiffs moved for reconsideration, raising two new arguments. They contended that the circuit court should not have relied on *Pyle* because that decision improperly referenced section 367f of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/367f (West 2018)) in its analysis, and incorrectly treated the City's group plan as a Medicare supplemental or "Medigap" policy. The circuit court denied the motion to reconsider on May 14, 2020. Plaintiffs timely filed their notice of appeal.

¶ 16                                    II. ANALYSIS

¶ 17    Section 2-619.1 of the Code permits a party to combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain defects or defenses. 735 ILCS 5/2-619.1 (West 2018). It is proper for a court when ruling on a motion to dismiss under either section 2-615 or section 2-619 to accept all well-pleaded facts in the complaint as true and to draw all reasonable inferences from those facts in favor of the nonmoving party. *Lykowski v. Bergman*, 299 Ill. App. 3d 157, 162 (1998). Our review is *de novo* for motions to dismiss brought under both sections 2-615 and 2-619. *Id.* Under *de novo* review, the reviewing court performs the same analysis the trial court would perform. *Thomas v. Weatherguard Construction Co.*, 2015 IL App (1st) 142785, ¶ 63.

¶ 18    A motion to dismiss under section 2-615 challenges the legal sufficiency of a complaint based upon defects apparent on its face. *Beacham v. Walker*, 231 Ill. 2d 51, 57 (2008). The critical

inquiry is whether the well-pleaded facts of the complaint, taken as true and construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Loman v. Freeman*, 229 Ill. 2d 104, 109 (2008). The complaint need only set forth the ultimate facts to be proved—not the evidentiary facts tending to prove such ultimate facts. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 369 (2004).

¶ 19 A motion to dismiss under section 2-619 admits the legal sufficiency of the complaint but raises defects, defenses, or some other affirmative matter that defeats the plaintiff's claim. *Ball v. County of Cook*, 385 Ill. App. 3d 103, 107 (2008). The phrase "affirmative matter" encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action. *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341, 344 (2010).

¶ 20                    A. Premium-Free Insurance Coverage

¶ 21 Plaintiffs argue that the City violated the Act by terminating their premium-free health care coverage once they became eligible for Medicare at age 65 because their Medicare eligibility was not a valid basis under the Act to terminate their right to premium-free health insurance coverage for life. They argue that the trial court's dismissal of their complaint resulted from the court's misconstruction of section 10(a) of the Act, which, according to plaintiffs, (1) provides that only a fraud conviction constitutes a valid event to terminate the premium-free health insurance coverage, (2) includes merely a coordination of benefits clause rather than a basis to reduce benefits when health insurance benefits are payable from any other source, and (3) merely uses the phrase "supplemental benefits" as a term-of-art to refer to a Medicare supplement insurance plan

or Medigap policy, so the Act does not reduce plaintiffs' benefits because the City's group insurance plan is a basic health insurance plan.

¶ 22    In response, defendants argue the trial court properly dismissed plaintiff's claims because the Act does not require the City to pay premiums for supplemental coverage and the City's health insurance plan at issue here became supplemental coverage once plaintiffs were eligible for Medicare benefits.

¶ 23    A case involving statutory construction, like this one, presents a question of law, which this court reviews *de novo*. *Board of Education of the City of Chicago v. Moore*, 2021 IL 125785, ¶ 18. The fundamental rule of statutory construction "is to ascertain and give effect to the legislature's intent" (*Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000)), and "[t]he plain language of the statute is the best indicator of legislative intent" (*United States v. Glispie*, 2020 IL 125483, ¶ 9). The court should give "words appearing in legislative enactments their common dictionary meaning or commonly accepted use unless otherwise defined by the legislature." *Bowes v. City of Chicago*, 3 Ill. 2d 175, 201 (1954); see also *People v. McChriston*, 2014 IL 115310, ¶ 15 ("it is entirely appropriate to employ a dictionary to ascertain the plain and ordinary meaning of [undefined] terms [contained in a statute]" (internal quotation marks omitted)). When a statute's language is clear and unambiguous, the court should not resort to further aids of construction. *Hall v. Henn*, 208 Ill. 2d 325, 330 (2003). "However, if the statutory language is ambiguous or unclear, this court may look beyond the act's language to ascertain its meaning. [Citation.] A statute is ambiguous if it is capable of more than one reasonable interpretation." *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11.

¶ 24　　Section 10 of the Act provides, in pertinent part:

　　　　"§ 10. Required health coverage benefits.

　　　　(a) An employer who employs a full-time *** firefighter, who *** suffers a catastrophic injury or is killed in the line of duty shall pay the entire premium of the employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee until the child reaches the age of majority or until the end of the calendar year in which the child reaches the age of 25 if the child continues to be dependent for support or the child is a full-time or part-time student and is dependent for support. The term 'health insurance plan' does not include supplemental benefits that are not part of the basic group health insurance plan. If the injured employee subsequently dies, the employer shall continue to pay the entire health insurance premium for the surviving spouse until remarried and for the dependent children under the conditions established in this Section. However:

　　　　　　(1) Health insurance benefits payable from any other source shall reduce benefits payable under this Section.

　　　　　　(2) It is unlawful for a person to willfully and knowingly make, or cause to be made *** any false, fraudulent, or misleading oral or written statement to obtain health insurance coverage as provided under this Section. A violation of this item is a Class A misdemeanor.

(3) Upon conviction for a violation described in item (2), a *** beneficiary who receives or seeks to receive health insurance benefits under this Section shall forfeit the right to receive health insurance benefits ***. ***

(b) In order for the *** firefighter, spouse, or dependent children to be eligible for insurance coverage under this Act, the injury or death must have occurred as the result of the *** firefighter's response to what is reasonably believed to be an emergency ***. Nothing in this Section shall be construed to limit health insurance coverage or pension benefits for which the officer, firefighter, spouse, or dependent children may otherwise be eligible." 820 ILCS 320/10 (West 2018).

¶ 25   Section 10 of the Act provides for health coverage benefits, which is defined as a public employer's payment of "the entire premium of the employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee." *Id.* § 10(a). But after setting out that requirement, section 10(a) uses the word "[h]owever" (*id.*), which means "in spite of that: on the other hand" (Merriam-Webster Online Dictionary, https:// www.merriam-webster.com/dictionary/however (last visited Dec. 9, 2021) [https://perma.cc/ NQ82-4QVA]) and signals that the subsections that follow, subsections (a)(1) through (a)(3), limit the health coverage benefits section 10(a) requires.

¶ 26   According to the plain language of section 10(a), the Act provides that the "[h]ealth insurance benefits" that section 10(a) guarantees are the payment of premiums for "the employer's health insurance plan" (820 ILCS 320/10(a) (West 2018)); "[h]owever," section 10(a)(1) reduces those benefits to the extent health insurance benefits are "payable from any other source" (*id.*

§ 10(a)(1)). And subsections (a)(2) and (a)(3) limit the obligation to pay the premiums when a beneficiary is convicted of fraud. *Id.* § 10(a)(2), (a)(3).

¶ 27    Medicare is the federal health insurance program (see *What's Medicare*, Medicare, https://www.medicare.gov/what-medicare-covers/your-medicare-coverage-choices/whats-medicare (last visited Dec. 9, 2021) [https://perma.cc/ZLN3-VQ7E]) and therefore constitutes health insurance benefits payable from a source other than the City's group insurance plan. Under the Act's plain language, the City's obligation to provide the benefit the Act requires—the payment of premiums for the City's group health insurance plan—is reduced when Medicare benefits are available.

¶ 28    Section 10(a) of the Act further states that "[t]he term 'health insurance plan' does not include supplemental benefits that are not part of the basic group health insurance plan." 820 ILCS 320/10(a) (West 2018). When Medicare is available, it serves as a primary insurance plan. See *How Medicare Works With Other Insurance*, Medicare, https://www.medicare.gov/supplements-other-insurance/how-medicare-works-with-other-insurance (last visited Dec. 9, 2021) [https://perma.cc/V4CB-4W3X]. Other insurance plans necessarily become "supplemental" coverage when they provide benefits that supplement Medicare, and public employers do not need to pay for such plans.

¶ 29    Accordingly, this court construes the plain language of the Act to conclude that it relieves the City of the requirement of paying health insurance premiums for Medicare-eligible individuals.

¶ 30    We find support for our conclusion in *Pyle*, 2012 IL App (5th) 110472, where the appellate court addressed the same issue in this case several years ago and resolved it in favor of the public employer. In *Pyle*, the plaintiff, an injured firefighter, argued that he was entitled to lifetime

payment of health insurance premiums, while his former municipal employer argued that its duty to make such payments ceased when the plaintiff attained age 65 and became Medicare eligible. *Id.* ¶¶ 5-6. The circuit court had ruled that the Act required the municipal employer to pay the plaintiff's premiums to supplement his Medicare coverage after he attained age 65 (*id.* ¶ 32), but the appellate court reversed, explaining that the Act "provides that '[h]ealth insurance benefits payable from any other source shall reduce benefits payable under this [s]ection.' " (*id.* ¶ 26 (quoting 820 ILCS 320/10(a)(1) (West 2000))). Because Medicare constituted " '[h]ealth insurance benefits payable from any other source,' " the plaintiff's Medicare eligibility meant that "the 'benefits payable' under section 10(a) of the Act, *i.e.*, the City's payment of health insurance premiums on his behalf, were required to be reduced." *Id.* (quoting 820 ILCS 320/10(a)(1) (West 2000)).

¶ 31     The court also explained that this result was consistent with section 10(a)'s statement that "[t]he term 'health insurance plan' does not include supplemental benefits." (Internal quotation marks omitted.) *Id.* ¶ 28. Once the plaintiff's primary plan became Medicare, the city's payment of premiums would have been for a "plan that supplemented Medicare," and "the plain language of the statute" did not require it "to pay premiums for these supplemental benefits." *Id.* ¶ 29; see also *McCaffrey v. Village of Hoffman Estates*, 2021 IL App (1st) 200395, ¶ 42 (following the *Pyle* analysis to conclude that a spouse's Medicare eligibility alone was sufficient to relieve the defendant municipal employer of its obligation to pay the spouse's health insurance benefits under the Act, even though the spouse chose not to take advantage of that Medicare coverage).

¶ 32     After construing the Act's plain language, the court stated that its construction was also consistent with section 367f of the Insurance Code (215 ILCS 5/367f (West 2000)), which allowed retired firefighters to continue their group insurance coverage by paying premiums. *Pyle*, 2012 IL App (5th) 110472, ¶ 30. After the retired firefighters become eligible for Medicare, they may pay premiums to use a group policy to supplement Medicare. *Id.* The court stated that its interpretation of the Act put the plaintiff "in a similar position as a noninjured retired firefighter, with both receiving pension benefits, Medicare benefits, and Medicare supplemental benefits. The Act-qualified employee is therefore put in the position he would have been in had he not been injured." *Id.* ¶ 31.

¶ 33     Since *Pyle* was decided in 2012, the General Assembly has not amended section 10(a) despite amending other provisions of the Act. "[W]hen the legislature chooses not to amend a statute after judicial construction," the court presumes "it has acquiesced" in that construction. *Glispie*, 2020 IL 125483, ¶ 10; see also *In re Marriage of Mathis*, 2012 IL 113496, ¶ 25 ("We assume not only that the General Assembly acts with full knowledge of previous judicial decisions, but also that its silence on this issue in the face of decisions consistent with those previous decisions indicates its acquiescence to them.").

¶ 34     We reject plaintiffs' argument that the Act guarantees lifetime premium-free health insurance under the City's group plan because the Act neither references Medicare nor states that benefits cease at a certain age. This argument seeks to add words to the Act that the legislature did not use and fails to construe the entire statute coherently. Although the Act does guarantee that injured firefighters will always have some type of health insurance coverage, whether from their

former employer or another source like Medicare, the Act never states that premium-free coverage under the employer's group plan must last a lifetime. Instead, section 10(a)(1) of the Act explicitly limits the employer's obligation to pay premiums for its group health insurance plan when benefits are payable from any other source. The public employer's obligation to pay the premiums is not reduced based on the beneficiaries' age *per se* but rather based on the existence of benefits payable "from any other source." 820 ILCS 320/10(a)(1) (West 2018).

¶ 35    Plaintiffs also argue that section 10(a)(1) is merely a coordination of benefits clause and its purpose is to determine which of two or more health insurance plans is the primary payer and which is the secondary payer. This argument is not persuasive. The term *benefits* as used in section 10(a)(1) does not refer to insurance payments for covered medical services. Rather, the Act defines benefits in section 10(a) to mean payment of "the entire *premium* of the employer's health insurance plan." (Emphasis added.) *Id.* § 10(a). Furthermore, the Act does not use the phrase "coordination of benefits" and section 10(a)(1) does not do the work of a coordination of benefits clause, which is found in insurance plans and spells out which plan has priority and how costs are apportioned. See *Blue Cross & Blue Shield of Texas, Inc. v. Commissioner of Internal Revenue*, 328 F.3d 770, 773 (5th Cir. 2003) ("[Coordination of benefits provisions in health insurance policies] set forth mechanical rules for determining whether a health plan is the primary plan or secondary plan with respect to each particular claim submitted under the plan."). The Act is not an insurance plan, and section 10(a)(1) does not mention primary or secondary payers or set forth how any particular claim is paid. Rather, section 10(a)(1) simply relieves public employers of the

Act's obligation to pay insurance premiums when beneficiaries have insurance from any other source.

¶ 36     Plaintiffs also argue that they are not attempting to acquire supplemental benefits, which they contend is a term-of-art in the health insurance lexicon that refers to benefits like dental and vision care. Moreover, plaintiffs contend the City's group insurance plan does not satisfy the requirements to constitute a Medicare supplement insurance plan or Medigap policy. However, the General Assembly did not define *supplemental benefits* as a Medicare supplement policy or limit them to dental and vision care. When the legislature does not define a word, the court should apply the common meaning (*Bowes*, 3 Ill. 2d at 201), and the common meaning of "supplement" is "something that completes or makes an addition" (Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/supplement (last visited Dec. 9, 2021) [https://perma.cc/2U24-FRNV]). The Act guarantees injured firefighters basic insurance coverage. When Medicare provides that coverage, the Act does not require the City to supplement it.

¶ 37     Finally, plaintiffs argue that when the court in *Pyle* referenced section 367f of the Insurance Code, the court improperly applied the tool of statutory construction known as *in pari materia* because the Act and the Insurance Code were enacted for different purposes. This argument lacks merit. *Pyle* did not rely on the Insurance Code to construe the Act's language. Instead, after analyzing the Act's plain language, the court referred to the Insurance Code to demonstrate that its interpretation was logically sound and consistent with the goals of the legislature. *Pyle*, 2012 IL App (5th) 110472, ¶ 31. Although looking to the Insurance Code was unnecessary to understand

the Act—and *Pyle* never stated otherwise—it showed that no absurd result flowed from *Pyle*'s interpretation of the Act's plain language.

¶ 38     The Act guarantees firefighters injured in the line of duty health and educational benefits and also confers rights to those benefits directly on the firefighters' spouses and children. But the Act limits a public employer's obligation to pay those benefits when they are payable from any other source, and those other sources include Medicare. Because the Act does not guarantee plaintiffs lifetime premium-free insurance under the City's plan, the trial court properly dismissed their claim.

¶ 39                                     B. Standing

¶ 40     Plaintiffs argue that they sufficiently asserted standing to bring claims for the City's alleged violations of the Act pertaining to their spouses' and dependents' health coverage because that health coverage was a result of plaintiffs' eligibility under the Act.

¶ 41     We review *de novo* the trial court's dismissal of these claims for lack of standing. *Lyons v. Ryan*, 201 Ill. 2d 529, 534 (2002). "A court will consider the validity of a statutory provision only at the instance of one who is directly affected by it ***." *Illinois Municipal League v. Illinois State Labor Relations Board*, 140 Ill. App. 3d 592, 599 (1986). To have standing, a plaintiff must possess a "personal claim, status, or right." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 493 (1988).

¶ 42     The Act grants the spouses and children of injured firefighters the right to premium-free health insurance. 820 ILCS 320/10(a) (West 2018). Those individuals would presumably have standing to claim that the City violated their rights under the statute when it stopped paying their

insurance premiums. But those claims are personal to them, as the individuals directly affected by the provisions of the Act at issue. Because none of the spouses or children are plaintiffs in this case, this court will not consider how the Act applies to them.

¶ 43   Plaintiffs argue, without citing relevant authority, that they should be able to assert claims on behalf of other people who are in the same family unit. But a close family relationship does not entitle someone to assert another person's claims. Husbands are not entitled to litigate their wives' claims simply because they are married. See *In re Marriage of Keller*, 2020 IL App (2d) 180960, ¶ 27 (husband lacked standing to advance an argument based on his wife's legal interests). "A party must assert its own legal rights and interests, rather than assert a claim for relief based upon the rights of third parties." *Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 36. Plaintiffs thus lack standing to assert claims based on the personal rights of their wives and adult children.

¶ 44   Plaintiffs also argue that they can assert the rights of absent third parties based on the rule of third party or *jus tertii* standing. The appellate court has relied on federal precedent to explain when this type of standing is allowed:

"  '[T]he [Supreme] Court has looked primarily to two factual elements to determine whether the rule should apply in a particular case. The first is the relationship of the litigant to the person whose right he seeks to assert. If the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue, the court at least can be sure that its construction of the right is not unnecessary in the sense that the right's enjoyment will be unaffected by the outcome of the suit. Furthermore, the relationship between the litigant

and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter. \*\*\*

The other factual element to which the Court has looked is the ability of the third party to assert his own right. Even where the relationship is close, the reasons for requiring persons to assert their own rights will generally still apply. If there is some genuine obstacle to such assertion, however, the third party's absence from court loses its tendency to suggest that his right is not truly at stake, or truly important to him, and the party who is in court becomes by default the right's best available proponent.' " *Illinois Municipal League*, 140 Ill. App. 3d at 603-04 (quoting *Singleton v. Wulff*, 428 U.S. 106, 114-16 (1976)).

According to the Supreme Court, *jus tertii* standing "should not be applied where its underlying justifications are absent." *Singleton*, 428 U.S. at 114.

¶ 45 The justifications for *jus tertii* standing do not exist here. Plaintiffs do not even attempt to explain why their wives and adult children are unable to assert their own rights. And the record does not suggest that they lack the capacity to do so. Therefore, we affirm the dismissal based on lack of standing of the claims plaintiffs asserted on behalf of their spouses and children.

¶ 46                                     III. CONCLUSION

¶ 47 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 48 Affirmed.

---

**No. 1-20-0829**

---

| | |
|---|---|
| **Cite as:** | *Barry v. City of Chicago*, 2021 IL App (1st) 200829 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-5287; the Hon. Raymond W. Mitchell, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Stephen B. Horwitz, of Hogan Marren Babbo & Rose, Ltd., of Chicago, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Celia Meza, Acting Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Ellen W. McLaughlin, Assistant Corporation Counsel, of counsel), for appellee. |

---