# Illinois Official Reports

## Appellate Court

---

### *Wilczak v. Village of Lombard*, 2016 IL App (2d) 160205

---

| | |
|---|---|
| Appellate Court Caption | KENNETH WILCZAK, Plaintiff-Appellant, v. THE VILLAGE OF LOMBARD, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-16-0205 |
| Filed | December 5, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 13-MR-1316; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jerome F. Marconi, of Law Offices of Jerome F. Marconi, of Chicago, for appellant.<br><br>Erin K. Lavery and Jason A. Guisinger, of Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.<br>Justices McLaren and Jorgensen concurred in the judgment and opinion. |

**OPINION**

¶ 1     The plaintiff, Kenneth Wilczak, appeals from the trial court's order granting summary judgment in favor of the defendant, the Village of Lombard, on the plaintiff's claim for health insurance benefits pursuant to the Public Safety Employee Benefits Act (Act) (820 ILCS 320/10(b) (West 2010)). On appeal, the plaintiff, a firefighter employed by the defendant, argues that he was injured in the line of duty during his response to what was reasonably believed to be an emergency and that he is thus entitled to benefits under the Act. We affirm.

¶ 2                                      BACKGROUND

¶ 3     On August 15, 2009, the plaintiff injured his shoulder when he was lifting a disabled citizen, who suffered from multiple sclerosis, from the floor to the bed. The record indicates that the plaintiff immediately began treatment for his shoulder injury but developed complications from his injury and was unable to continue working. On April 16, 2010, the plaintiff filed an application for a line-of-duty disability pension pursuant to section 4-110 of the Illinois Pension Code (40 ILCS 5/4-110 (West 2010)). On June 14, 2012, the board of trustees of the Lombard Firefighter's Pension Fund granted the plaintiff's application for a line-of-duty disability pension.

¶ 4     On August 3, 2012, the plaintiff petitioned the defendant for health insurance benefits under section 10 of the Act, which provides in relevant part:

> "(a) An employer who employs a full-time law enforcement, correctional or correctional probation officer, or firefighter, who, on or after the effective date of this Act suffers a catastrophic injury or is killed in the line of duty shall pay the entire premium of the employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee ***.
>
> * * *
>
> (b) In order for the law enforcement, correctional or correctional probation officer, firefighter, spouse, or dependent children to be eligible for insurance coverage under this Act, the injury or death must have occurred as the result of the officer's response to fresh pursuit, the officer or firefighter's response to what is reasonably believed to be an emergency, an unlawful act perpetrated by another, or during the investigation of a criminal act. Nothing in this Section shall be construed to limit health insurance coverage or pension benefits for which the officer, firefighter, spouse, or dependent children may otherwise be eligible." 820 ILCS 320/10(a), (b) (West 2010).

The defendant declined the plaintiff's request for benefits. On December 10, 2013, the plaintiff filed, in the circuit court of Du Page County, an amended complaint for a declaratory judgment that he was entitled to the benefits. The plaintiff argued that he was entitled to the benefits because his injury occurred in response to what he reasonably believed was an emergency. The parties filed cross-motions for summary judgment.

¶ 5     Attached to the plaintiff's motion for summary judgment were the discovery depositions of the plaintiff and another firefighter, Tony Sally. The plaintiff testified that he was a firefighter/paramedic and had been employed by the defendant for 24 years. On August 15, 2009, he was on duty when he received a dispatch to an address in Lombard. He proceeded to that address in an ambulance with Sally. The plaintiff testified that he had been dispatched to

that address on at least 10 previous occasions. In the ambulance, he told Sally that, when he last was called to that address, he had to call for additional firefighters to help because the disabled citizen was stuck in the bathroom, between the toilet and the vanity. On the day at issue, when the plaintiff and Sally proceeded to the address, the lights and sirens were activated because the fire department's rules required them to treat the call as an emergency. The plaintiff knew that the disabled citizen at the address suffered from multiple sclerosis and weighed between 250 and 260 pounds.

¶ 6    The plaintiff further testified that, when he and Sally entered the citizen's bedroom, the plaintiff noticed that the citizen was "stuck between his bed and a wall" and could not get up. The plaintiff and Sally assessed the citizen to make sure he was okay. The plaintiff could not remember what the assessment entailed, but he and Sally concluded that it was safe to move the citizen off the floor and into bed. While they were lifting him, the citizen initially became hung up on the side of the bed. The plaintiff and Sally looked at each other and decided to make another attempt, so they "kind of lunged and swung him onto the bed." After they placed the citizen in bed, the plaintiff and Sally left the residence. The plaintiff acknowledged that they could have safely rested the citizen back on the floor when he became snagged on the bed. During the lunging motion, the plaintiff felt a significant pain in his left shoulder.

¶ 7    The plaintiff testified that he did not consider an "invalid assist," which he described as a call to help a person who has a debilitating injury or illness, to be a routine call. He acknowledged that, at a January 20, 2012, pension board hearing, he testified that the August 15, 2009, call to the Lombard residence was a routine call. The plaintiff believed, however, that his injury occurred during a response to an emergency. The emergency was the 911 call and it continued until he left the residence. The plaintiff acknowledged that he was familiar with the policies and procedures of Du Page Public Safety Communications (DuComm), the dispatch center used by the defendant.

¶ 8    Sally testified that he had been dispatched to the residence at issue about 5 to 10 times prior to August 15, 2009. All of the calls were for invalid assists, where they had to lift the disabled citizen off the floor and place him in bed or in his wheelchair. On August 15, 2009, Sally and the plaintiff were dispatched to the residence at issue for an invalid assist. The Lombard fire department required firefighters to apply the same level of urgency to every type of call. Whether the call was for chest pain or an invalid assist, they were required to respond with lights and sirens activated. When they entered the citizen's apartment, they carried a "jump bag" with them, in case the citizen required any treatment. After assessing the citizen, they determined that he was not injured and they proceeded to put him in bed. At no point was the citizen in jeopardy of falling to the floor while they were lifting him. Sally described the call as a routine invalid assist. He acknowledged that not every call that paramedics respond to is exactly what they were dispatched for. Sally acknowledged that invalid assists were treated as medical calls and that firefighters could not leave a call until their duties were done.

¶ 9    Attached to the defendant's cross-motion for summary judgment were dispatch reports showing that the Lombard fire department had received 73 dispatches to the address at issue, for invalid assists, between August 15, 2007, and August 15, 2009. The dispatch report for August 15, 2009, indicated that the dispatcher provided the following information: "invalid assist; needs help into bed—has MS." The dispatcher also classified the call as a "priority 2." In an affidavit from John Mostaccio, the communications manager of DuComm, he attested that an invalid assist was classified as a "priority 2" incident, which meant that it was not

- 3 -

life-threatening. The defendant also attached sections 8.1 and 11.1 of the DuComm procedure manual. Pursuant to section 11.1, the dispatcher was required to confirm that an individual requesting an invalid assist was not sick or injured and needed assistance only in being moved from one place to another. Pursuant to section 8.1, the dispatcher was required to disclose the specific nature of the call in the initial dispatch.

¶ 10    Attached to the defendant's reply in support of its cross-motion for summary judgment was Lombard fire department policy No. 7.08. That policy required paramedics to request additional help when "the patient [was] being removed from a bed and the carry involves no removal down a flight of stairs, but the patient exceeds 225 lbs." The policy also provided that "paramedics, regardless of weight, may request assistance if in their judgment it would benefit the patient or paramedic from possible injury."

¶ 11    On February 16, 2016, following a hearing, the trial court granted the defendant's motion for summary judgment and denied the plaintiff's motion for summary judgment. The trial court found that, although the situation involved a 911 call, no person would reasonably believe that there was an emergency. The trial court found that there was no imminent danger. The trial court noted that the dispatch report indicated that the call was for an invalid assist and noted that the plaintiff had responded to calls at the same address on 10 previous occasions. The plaintiff filed a timely notice of appeal.

¶ 12                                                          ANALYSIS

¶ 13    On appeal, the plaintiff argues that the trial court erred in granting summary judgment in favor of the defendant and denying his motion for summary judgment. Summary judgment is appropriate only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). We review *de novo* the propriety of a trial court's grant of summary judgment. *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461 (2010). Summary judgment "is a drastic means of disposing of litigation and, therefore, should be allowed only when the right of the moving party is clear and free from doubt." *Id.*

¶ 14    Section 10 of the Act sets forth two requirements for the award of health insurance benefits to a firefighter. Under section 10(a), such benefits are available only where the firefighter "suffers a catastrophic injury or is killed in the line of duty." 820 ILCS 320/10(a) (West 2012). Section 10(b) further provides that "the injury or death must have occurred as the result of the *** firefighter's response to what is reasonably believed to be an emergency, an unlawful act perpetrated by another, or during the investigation of a criminal act." 820 ILCS 320/10(b) (West 2010).

¶ 15    The defendant does not dispute that the plaintiff suffered a "catastrophic injury." The defendant acknowledges that the plaintiff's injury was the basis for his line-of-duty disability pension. An injury resulting in a line-of-duty disability pension is considered a catastrophic injury as a matter of law. *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 25. Thus, the plaintiff has met the first requirement to be entitled to benefits pursuant to the Act. Accordingly, we turn to the issue of whether plaintiff has met the requirement set forth in section 10(b) of the Act. As noted above, section 10(b) provides that the injury must have occurred under one of four specified circumstances. 820 ILCS 320/10(b) (West 2010). The

parties agree that the only question in this case is whether the plaintiff's injury was sustained in response to what was reasonably believed to be an emergency. See *id.*

¶ 16    Our supreme court has held that an "emergency" under section 10(b) is an unforeseen circumstance involving imminent danger to a person or property requiring an urgent response. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 64. Accordingly, "[t]o be entitled to continuing health coverage benefits under section 10(b), the injury must occur in response to what is reasonably believed to be an unforeseen circumstance involving imminent danger to a person or property requiring an urgent response." *Id.* The word "emergency" suggests the legislature's intent to cover life-threatening or dangerous situations that arise in a firefighter's employment. *Id.* ¶¶ 67-68.

¶ 17    In the present case, the plaintiff's belief that he was responding to an emergency was not reasonable and he is not entitled to benefits under the Act. The record reveals that the plaintiff was dispatched for an invalid assist. DuComm protocols required the dispatcher to verify that the disabled citizen was not sick or injured and needed assistance only in being moved from one place to another. It was also DuComm's policy to disclose the specific nature of the call in the initial dispatch. The dispatcher indicated that the citizen needed help only getting into bed. The plaintiff testified that he was familiar with DuComm dispatch procedures. The record indicates, therefore, that the plaintiff should have been aware from the beginning that the call did not involve an emergency.

¶ 18    The plaintiff testified that Lombard fire department rules required him to respond with lights and sirens activated. However, that required response—as if there were an emergency—does not establish that there was an emergency within the meaning of section 10(b) of the Act. We acknowledge that the plaintiff subjectively believed that he was responding to an emergency. The plaintiff testified that, when he initially responded, he did not know what he would find when he got to the disabled citizen's residence. He was aware that the disabled citizen's illness was getting worse and he did not know if the citizen was injured. Nonetheless, even if the plaintiff subjectively believed that he was responding to an emergency, what he learned when he arrived confirmed that it was not an emergency. *Bremer v. City of Rockford*, 2015 IL App (2d) 130920, ¶ 55 (whether an event is an emergency can change as the circumstances change). The plaintiff testified that, after an initial assessment, he determined that the disabled citizen was not injured and did not require medical attention. Although the citizen still needed to be moved, the citizen was not in imminent danger, and no unforeseen circumstances arose during the response. Accordingly, the plaintiff could not have reasonably believed that he was responding to an emergency when he sustained his injury.

¶ 19    The plaintiff argues that it was an emergency because he did not have the option of waiting for someone else to help move the disabled citizen. However, there is no support in the record for this assertion. In fact, the record indicates that the plaintiff and Sally could have called for help to move the disabled citizen as the plaintiff had done so on a previous occasion when the citizen was stuck between a toilet and a vanity. Additionally, Lombard fire department policy No. 7.08 indicated that a paramedic could request assistance if, in the paramedic's judgment, it would be beneficial. On the call at issue in this case, the citizen was not in imminent danger and the need to move him did not require an urgent response. Under the circumstances, the plaintiff could have called and waited for assistance in moving the citizen.

¶ 20    In arguing that the circumstances at issue constituted an emergency, the plaintiff relies on *Springborn v. Village of Sugar Grove*, 2013 IL App (2d) 120861. *Springborn* was a

consolidated case involving two police officers, Springborn and Cecala, who suffered catastrophic injuries. At issue was whether the officers were responding to emergencies pursuant to section 10(b) of the Act when they suffered their injuries. Springborn was on routine patrol when he heard a dispatch that a paving truck was dropping chunks of asphalt onto a roadway. *Id.* ¶ 8. Springborn believed that the chunks of asphalt in the roadway constituted an "emergency" and an "immediate safety hazard." *Id.* ¶ 9. Springborn parked near the asphalt chunks, activated his emergency lights, and proceeded to remove the chunks from the roadway. *Id.* ¶ 10. While doing so, he slipped and injured his back, suffering a catastrophic injury. *Id.*

¶ 21      Cecala was dispatched to investigate a car accident. *Id.* ¶ 15. When he arrived at the scene, he found that a traffic light pole had been struck by a car and had fallen into the roadway. *Id.* Cecala was concerned because the light pole posed a roadway obstruction and because the pole had exposed live wires attached. *Id.* Cecala characterized the situation as a hazard and an emergency. *Id.* ¶ 16. Cecala parked his car and activated his emergency lights. *Id.* Cecala was catastrophically injured when he manually moved the pole off the roadway. *Id.* ¶ 19.

¶ 22      In *Springborn*, this court affirmed the trial court's grant of summary judgment in favor of both officers. We held that both officers believed that they were facing emergencies, as they had categorized the roadway obstructions as hazards or emergencies. *Id.* ¶ 34. This court further held that the officers' subjective beliefs were reasonable because the roadway obstructions involved imminent danger to a person or property requiring an urgent response. *Id.* ¶ 36. Additionally, we noted that the particular circumstances of the events were not foreseeable. *Id.* Accordingly, both officers were entitled to benefits under section 10 of the Act.

¶ 23      The plaintiff argues that, if Springborn's act of moving asphalt chunks from the roadway and Cecala's act of moving a traffic-light pole were considered emergencies, certainly moving the disabled citizen to a place of safety qualifies as an emergency. We agree that, as did the officers in *Springborn*, the plaintiff subjectively believed that he faced an emergency. The plaintiff testified that he responded as if it were an emergency because he was aware of the citizen's debilitating illness, and was not sure how the citizen ended up on the floor, whether the citizen had injured himself, or whether there were other complications from the citizen's illness. The plaintiff believed that the emergency response continued when he moved the citizen and suffered the catastrophic injury.

¶ 24      Nonetheless, unlike in *Springborn*, the plaintiff's subjective belief that his injury was suffered in response to an emergency was not reasonable. In *Springborn*, when the officers moved the roadway obstructions and were injured, the roadway obstructions were on heavily-trafficked roadways and posed immediate danger to drivers. *Id.* ¶ 37. In this case, when the plaintiff and Sally moved the disabled citizen, there was no immediate danger to the citizen or the firefighters, and no unforeseen circumstances arose. Once the plaintiff and Sally arrived, they completed an initial assessment and learned that the citizen was not injured and did not need medical attention. The citizen needed only to be moved into bed, as the initial dispatch had indicated. Accordingly, there was no imminent danger that required immediate action. Even if the plaintiff's initial subjective belief that he was responding to an emergency was reasonable, it was no longer reasonable once he and Sally completed their initial assessment of the citizen. *Bremer*, 2015 IL App (2d) 130920, ¶ 55 (whether an emergency exists depends on the circumstances of the moment; emergencies can arise and abate as the

circumstances change). As such, unlike the officers in *Springborn*, the plaintiff was not injured while responding to what was reasonably believed to be an emergency, and the plaintiff is not entitled to benefits under section 10 of the Act.

¶ 25                                              CONCLUSION
¶ 26          For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 27          Affirmed.