# Illinois Official Reports

## Appellate Court

> ### *Beckman v. City of Peoria*, 2019 IL App (3d) 180467

| | |
|---|---|
| Appellate Court Caption | JENNIFER BECKMAN, Plaintiff-Appellant, v. THE CITY OF PEORIA, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-18-0467 |
| Rule 23 order filed<br>Motion to<br>publish allowed<br>Opinion filed | February 20, 2019<br><br>March 15, 2019<br>March 15, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 17-MR-786; the Hon. Katherine Gorman Hubler, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jennifer A. Bonesteel, of Stephen P. Kelly, Attorney at Law, LLC, of Peoria, for appellant.<br><br>Kenneth M. Snodgrass Jr. and Kevin O. Sheahan, of Hasselberg Grebe Snodgrass Urban & Wentworth, of Peoria, for appellee. |
| Panel | JUSTICE WRIGHT delivered the judgment of the court, with opinion.<br>Justices Carter and Holdridge concurred in the judgment and opinion. |

**OPINION**

¶ 1        Plaintiff, Jennifer Beckman, is a former police officer with defendant, the City of Peoria. On February 26, 2015, plaintiff participated in mandatory riot training, which included a "briefing/classroom" session and a field simulation. During the field simulation, plaintiff suffered a career ending "catastrophic injury," which she believes entitles her to health coverage benefits under section 10 of the Public Safety Employee Benefits Act (Act) (820 ILCS 320/10 (West 2014)). Plaintiff argues her injury was in response to what she "reasonably believed to be an emergency" under the requirement of section 10(b). 820 ILCS 320/10(b) (West 2014).

¶ 2                                    I. BACKGROUND

¶ 3        On February 26, 2015, as part of the field simulation, plaintiff and her colleagues wore full riot gear and rode together to the simulation site. Once the simulation began, the officers alighted from their vehicle, assumed riot formation, and moved toward the simulated riot, which, unbeknownst to the officers, was inside the opera building of the Expo Gardens. Immediately upon "moving out," plaintiff slipped and fell on the snow-and-ice-covered pavement, striking her head on the ground. Plaintiff was asked by her fellow officers whether she could continue, as well as whether she wanted to go to the hospital or call an ambulance. According to plaintiff, she was treating the simulation as a "real life" emergency, as instructed, so she got up and continued with the riot training, which included police personnel throwing balls, slapping the officers' shields, and attempting to penetrate the officers' formation. Plaintiff completed the simulation and subsequent defensive tactics training before obtaining medical treatment the next day.

¶ 4        On September 29, 2017, following an administrative hearing held pursuant to city code, the hearing officer issued a decision denying plaintiff benefits under the Act. Despite acknowledging plaintiff was ordered to react as if an emergency existed during the riot simulation, the hearing officer found the evidence did not "support a finding that Beckman was injured while responding to what is reasonably believed to be an emergency because she encountered no unforeseen circumstances involving imminent danger to person or property." On October 11, 2017, plaintiff appealed to the Peoria County circuit court. On July 30, 2018, the trial court affirmed the hearing officer's decision. Plaintiff filed a notice of appeal on August 1, 2018.

¶ 5                                     II. ANALYSIS

¶ 6        A plaintiff seeking health coverage benefits under section 10 must meet the requirements of both subsections (a) and (b), which, in pertinent part, provide:

> "(a) An employer who employs a full-time law enforcement *** officer *** who *** suffers a catastrophic injury *** shall pay the entire premium of the employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee ***. ***
>
>                                     * * *
>
> (b) In order for the law enforcement *** officer, firefighter, spouse, or dependent children to be eligible for insurance coverage ***, the injury or death must have

occurred as the result of the officer's response to \*\*\* what is reasonably believed to be an emergency \*\*\*." 820 ILCS 320/10(a), (b) (West 2014).

¶ 7    In this case, the parties agree that plaintiff suffered a "catastrophic injury" within the requirement of section 10(a). See 820 ILCS 320/10(a) (West 2014). Thus, the only issue presented is whether the administrative hearing officer, who was affirmed by the trial court, erred by finding plaintiff's injury did not occur in "response to what is reasonably believed to be an emergency" under section 10(b). See 820 ILCS 320/10(b) (West 2014).

¶ 8    This determination presents a mixed question of law and fact because it requires an examination of the legal effect of a given set of facts. *Oskroba v. Village of Hoffman Estates*, 404 Ill. App. 3d 692, 699-700 (2010); see also *Pedersen v. Village of Hoffman Estates*, 2014 IL App (1st) 123402, ¶ 52. Thus, the clearly erroneous standard of review is proper, which necessitates a reversal if our court is left with a "definite and firm conviction" that a mistake was made. *Oskroba*, 404 Ill. App. 3d at 699-700; *Pedersen*, 2014 IL App (1st) 123402, ¶ 52.

¶ 9    Our supreme court has considered when an injury from a training exercise occurs in "response to what is reasonably believed to be an emergency" under section 10(b). See *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012. In *Gaffney*, our supreme court reviewed two cases, consolidated on appeal. *Id.* ¶ 2. The first case involved a firefighter named Michael P. Gaffney, while the second case involved a firefighter named Brian J. Lemmenes. *Id.* ¶¶ 6, 20. In both cases, the firemen were injured during an emergency training exercise. *Id.* Before reaching the facts of each case, our supreme court concluded an "emergency" under section 10(b) is "an unforeseen circumstance involving imminent danger to a person or property requiring an urgent response," connoting the intent for that subsection to cover "life-threatening" or "dangerous situations" in an officer's employment. *Id.* ¶¶ 64, 67-68; *Wilczak v. Village of Lombard*, 2016 IL App (2d) 160205, ¶ 16.

¶ 10   Pertaining to Gaffney, our supreme court concluded he reasonably believed he was responding to an emergency during the training exercise. *Gaffney*, 2012 IL 110012, ¶ 69. Although Gaffney was instructed on how to proceed, an unforeseen circumstance arose during the training exercise. *Id.* ¶ 65. Namely, the crew's hose became entangled, requiring Gaffney to backtrack towards the obstruction with "no visibility and the risk of becoming disoriented in the smoke-filled building." *Id.* Gaffney's injury arose while freeing the obstructed hose. *Id.* ¶ 67. Our supreme court reasoned that the training exercise, which used real fire, turned into an emergency because the crew was stranded with no visibility, water, or option of ending their participation. *Id.* ¶¶ 66-67. Thus, Gaffney's injury was found to be within the purview of section 10(b) of the Act. *Id.* ¶ 69.

¶ 11   Regarding Lemmenes, our supreme court concluded he was not injured while responding to an emergency. *Id.* ¶ 79. Lemmenes, who was training to save a "downed firefighter," was not injured while operating under similar circumstances as Gaffney. *Id.* ¶¶ 74-75. Instead, Lemmenes was injured while training with a predetermined path, a "blacked out" mask, and no real fire. *Id.* ¶ 74. If his air supply ran out, Lemmenes was to stop participating. *Id.* Therefore, despite being ordered to treat the exercise as an emergency, Lemmenes was in no real danger under the "controlled conditions." *Id.* ¶ 75. Our supreme court reasoned that Lemmenes understood he was participating in training, and that no emergency arose similar to that faced by Gaffney. *Id.* ¶ 77; see also *Wilczak*, 2016 IL App (2d) 160205, ¶¶ 18, 24 (holding, in the context of aiding a disabled citizen, the plaintiff's subjective belief of an emergency was unreasonable, where there was no imminent danger or unforeseen circumstances after an initial

assessment revealed no injuries or need for medical attention). Thus, section 10(b) was inapplicable. *Gaffney*, 2012 IL 110012, ¶ 79.

¶ 12 Here, we conclude plaintiff could not have "reasonably believed" she was responding to an emergency but instead falls within the factual scenario more similar to Lemmenes. Namely, we reject plaintiff's argument that she "subjectively held said occurrence to be an emergency based on the belief she was instructed to adopt." It is undisputed that the simulation in this appeal, preceded by a "briefing/classroom" session that generally "explain[ed] what [was] going to happen later in the day," was just that—a simulation. Further, the snow-and-ice-covered pavement, although unforeseen, did not create and could not be "reasonably believed" to create an emergency. This circumstance, in the context of a riot simulation under controlled conditions, created no actual imminent danger to plaintiff or her colleagues requiring an urgent response. Simply put, plaintiff's injury was neither in response to an emergency nor to circumstances "reasonably believed" to be an emergency. Indeed, plaintiff was asked if she could continue, an option that was significant in *Gaffney* because it is not indicative of an emergency situation.

¶ 13 Pursuant to the above authorities, we recognize the legal significance of and factual differences between injuries that occur in response to treating a training simulation as a real-life emergency, and injuries that occur in response to real life-threatening or dangerous situations. Based upon the unique facts of this case, we conclude plaintiff was operating under the former circumstances, which do not invoke section 10(b). See *id.* Thus, the findings of the hearing officer were well supported by the record and not clearly erroneous.

¶ 14                                      III. CONCLUSION
¶ 15 The judgment of the circuit court of Peoria County is affirmed.

¶ 16 Affirmed.